UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

COREY HOLDER                              CIVIL ACTION NO. 12-cv-2275

VERSUS                                    JUDGE FOOTE

WARDEN, U.S. PENITENTIARY                 MAGISTRATE JUDGE HORNSBY
POLLOCK, ET AL

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Corey Holder ("Petitioner") and his co-defendant Jerrod Johnson of three counts of armed robbery. Petitioner was also adjudicated a third-felony habitual offender and received life sentences. His conviction was affirmed on direct appeal. State v. Holder, 25 So.3d 920 (La. App. 2d Cir. 2009). Petitioner then pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on a number of grounds. For the reasons that follow, it is recommended that his petition be denied.

**Summary of the Facts**

Three or four men, dressed in black and wearing masks and gloves, entered the Thrifty Liquor on Linwood Avenue in Shreveport near midnight on May 7, 2004. They were armed with a variety of handguns and rifles. They forced the victims to the floor and took cash from the registers and some of the employees. The men fled in a white Buick sedan.

Police had been alerted that armed men were seen entering the store, and two officers arrived just as the Buick was leaving. A chase ended on a dead-end street, and the robbers jumped out and ran. A canine officer spotted a black male in some shrubs and ordered him to crawl out. The suspect did, but kept crouching with his hands in the air, and he would not get on the ground as commanded. The officer deployed his dog, which bit the suspect on the tricep/bicep area. The suspect ran and jumped a five-foot chainlink fence with the dog attached to his arm. The dog was ripped loose as the man crossed the fence, but the dog later managed to catch up with the suspect and bite him in the buttocks as the man jumped another fence. The suspect escaped.

No fingerprints were found in the store or on recovered items, but the police did recover a bloody shirt, ski masks, gloves, weapons, and other items in the area. An investigation led to Petitioner as a suspect. He was found to have a scar on his left tricep, present on the back and front of his arm. He also had scarring on his right thigh or buttock area. Officers obtained buccal swabs from Petitioner and Jerrod Johnson for DNA testing, and their samples were found to be consistent with DNA recovered from items at the scene of the crime.

**Ineffective Assistance of Counsel; Section 2254(d) Standard**

Each of Petitioner's claims asserts ineffective assistance of counsel. To prevail on such a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had

counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

As will be discussed below, Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

**No Motion to Suppress**

Petitioner argues that counsel was ineffective for not filing a motion to quash the results of the buccal swab that police used to collect DNA from the cells inside his cheek. He alleges that police came to the Bossier jail to obtain the swab and told him they had a search warrant, but they refused to show him the warrant. Petitioner submits a copy of a warrant return that he says police left, but he says he has searched the judicial record and

found no warrant. Thus, he is adamant that no warrant exists, and that counsel was ineffective for not filing a motion to suppress the critical DNA evidence.

The court's review of the 30-volume record did not reveal a warrant for the swab, and the State's briefs filed in state and federal court did not squarely address whether the warrant exists. It seemed unlikely that Daryl Gold, the zealous defense counsel in this case, would not have filed a motion to suppress if there were no warrant. The court, aware that the State sometimes inadvertently omits material from the record filed in this court, and not all investigative materials are always included in the court record, ordered the State to make a diligent search for any warrant and either supplement the state court record with a copy or concede that there was no warrant.

The State responded by filing a copy of a warrant issued in January 2005 by a Bossier Parish judge. The warrant was based on an application by Detective McWilliams, who testified that Petitioner had been arrested at a club after an altercation with police, and he was found to possess a handgun. A second handgun was found in a vehicle that Petitioner had just exited, but Jerrod Johnson claimed that gun belonged to him. The warrant to swab for Petitioner for DNA was requested to compare the results to DNA samples found on the two handguns.

Petitioner first presented this claim on a post-conviction application. The state district judge stated that the claim attempted to reargue the procedure by which the police obtained the DNA swab and characterized the claim as repetitive of issues addressed on appeal. Tr. 6248-49. That characterization is questionable. The state appellate court then summarily

stated with respect to all of Petitioner's claims: "On the showing made, this writ application is hereby denied." Tr. 6445. The Supreme Court of Louisiana denied writs without comment. Tr. 6623.

The state court's decision is assessed under the doubly deferential standard set forth above. And the lack of analysis by the state court does not change that. "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011). A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Pinholster, 131 S.Ct. at 1402, citing Richter, 131 S.Ct. at 786. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision. Richter, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

The existence of the warrant undermines Petitioner's claim that counsel was ineffective. The swab was lawfully taken based on the warrant, albeit in connection with the investigation of another case. Counsel lacked the grounds claimed by Petitioner to file a motion to suppress. The state court's decision that counsel was not ineffective for not filing a motion to suppress was a reasonable adjudication, so habeas relief is not available on this

claim. See also Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986)(defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence).

**No DNA Expert**

      Key items of evidence that linked Petitioner to the crime were DNA test results from two blood-stained shirts found along the path taken by the man who had been bitten. Mary Dukes of the North Louisiana Crime Lab testified as an expert witness and said the DNA taken from the items of evidence were consistent with the DNA analysis of a swab taken from Petitioner's cheek. She said the probability of a DNA profile other than Petitioner's matching the evidence was one in 19.2 trillion. Kelli Raley and Stewart Raley, who are also employed as analysts at the Crime Lab, added support to the conclusion. Kelli Raley said that she performed a technical peer review analysis and determined that Dukes followed the correct procedure and analysis. Stewart Raley testified that he was a tech review member and that the analyses were performed correctly on the items compared to Petitioner and his co-defendant.

      There was extensive testimony and cross-examination about the relative fluorescence unit (RFU) levels employed by the lab as part of the testing. The lab had, prior to this testing, lowered its threshold for poor samples from 150 to 50. Defense counsel tried mightily to establish that this indicated a lack of reliability in the testing.

      Petitioner argues that his counsel was ineffective because he did not retain a defense DNA expert to challenge the State's DNA evidence. Petitioner even contends that his

attorney, Daryl Gold, asked if Petitioner wanted to proceed with a hired expert on DNA, and Petitioner said he did. Petitioner first raised this claim in his post-conviction application. Tr. 6249. The state district judge stated that the claim "reverts back to the sufficiency of evidence and was argued or inexcusably failed to be pursued on the Appellate level by Petitioner." This Strickland claim was plainly distinct from any sufficiency of the evidence claim, so the trial court should have addressed it on the merits. The state appellate court did so when it summarily stated with respect to all of Petitioner's claims: "On the showing made, this writ application is hereby denied." Tr. 6445. The Supreme Court of Louisiana denied writs without comment. Tr. 6623.

Section 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court unless the Petitioner meets his burden under the statute. "There is no text in the statute requiring a statement of reasons" by the state court. Richter, 131 S.Ct. at 784. When a federal claim has been presented to the state court and that court has denied relief, it is presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Id. at 784-85. There is no indication that Petitioner's Strickland claims were denied on procedural grounds, so the state court adjudicated them on the merits, and the claims are subject to Section 2254(d) review even though the court issued only a summary ruling that provided no significant explanation for its decision. Id. As noted earlier, "Section 2254(d) applies even where there has been a summary denial." Pinholster, 131 S. Ct. at 1402.

"Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose defects in an expert's presentation." Richter, 131 S.Ct. at 791. Both Mr. Gold and Peter Flowers (counsel for co-defendant) cross examined Ms. Dukes at length regarding the RFU protocols and the effect, if any, it had on the testing done in this case. The experts were able to answer all of the questions despite the dogged efforts of defense counsel over scores of pages of the transcript. Counsel were able to obtain concessions that the lab protocols had changed to what looked like a more relaxed standard, and the lab's paperwork on the issue was less than consistent. But Ms. Dukes explained that when the lab first analyzed the material in this case there were no known suspects. They tested the material to obtain the maximum amount of information from the samples, the effect of which was to actually exclude rather than include more people. Just as in Richter, counsel in this case may not have had a competing expert, but they rendered active and capable advocacy through skillful cross-examination that elicited some concessions from the State's experts and drew attention to weaknesses in their conclusions.

Petitioner has continued to argue that the different protocol should have been challenged by a defense expert, but it has not been demonstrated despite the many pages devoted to this issue, that it was likely to have made a difference. Given the lack of an articulated basis for an expert to have significantly benefitted the defense, counsel was not ineffective for not requesting appointment of an expert, and the state courts did not make an objectively unreasonable application of Strickland when they denied this claim. See Evans

v. Cockrell, 285 F.3rd 370, 377 (5th Cir. 2002) (reversing habeas grant of similar Strickland claim when petitioner did not present evidence or allegations concerning what a defense blood evidence expert would discovered by testing or testified to at trial); Guidry v. Cain, 2005 WL 1330133 (W. D. La. 2005) (Hill, M.J.) (rejecting Strickland claim based on lack of request for pathology expert because petitioner failed to identify an expert witness who would have delivered testimony favorable to the defense); and Hansbro v. Cain, 2006 WL 3488729 (W.D. La. 2006) (Hornsby, M.J.) (rejecting Strickland claim based on lack of request for DNA expert because petitioner did not show reasonable probability expert would have been of assistance).

Both defendants were indigent. If counsel had requested appointment of an expert at the expense of the state, state law would have required that he establish a reasonable probability that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet that standard, a defendant must establish with a reasonable degree of specificity that the expert assistance is required to answer a substantial issue or question that is raised by the prosecution's case or to support a critical element of the defense. State v. Lee, 879 So.2d 173, 176-77 (La. App. 1st Cir. 2004), citing State v. Touchet, 642 So.2d 1213 (La. 1994). Both counsel, despite their extensive cross-examination of the DNA experts and reputations for providing zealous defenses, apparently did not believe they could meet that standard to the satisfaction of the state court. When the prosecutor attempted to imply to the jury that the defense should back their DNA challenge with expert testimony, defense counsel objected that their clients were

indigent and "They can't get an expert here." Tr. 5169. It is apparent, based on the record and the reputation of the two defense counsel in this case, that they would have requested appointment of an expert if they believed there were any likelihood the request would be granted. The state court's adjudication of this Strickland claim was not unreasonable, so habeas relief is not permitted.

The same is true of Petitioner's related claim that counsel should have retained an expert because the DNA sample was unlawfully forced from him without consent, and "there was a real concern" that the detectives who would do that "would have went further and switched or altered the DNA sample, contrary to law." The chain of custody of the sample was established at trial, the lab protocols were testified about at great length, and there was no evidence of any impropriety in the handling of the sample. Given the lack of any factual basis for this bold claim, this court cannot overturn the state court's reasonable rejection of this claim.

**Appellate Review of Batson Claim**

Counsel for Petitioner argued during jury selection that the prosecutor had exercised peremptory challenges based on race in violation of Batson v. Kentucky, 106 S.Ct. 1712 (1986). Under Batson, there is three-part process for evaluating claims that the prosecutor used peremptory challenges in violation of equal protection clause: (1) the defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race, (2) if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question, and (3) in light of the parties' submissions, the trial court must

determine whether the defendant has shown purposeful discrimination. Miller-El v. Cockrell, 123 S.Ct. 1029, 1035 (2003).

Counsel based his challenge on the fact the State had used nine of its eleven peremptory challenges to strike black jurors. Tr. 2819-61. The State responded that three of the seated jurors were black, and the State had accepted a fourth black juror who was then stricken by the defense because the juror's brother was an FBI agent. After much discussion, Judge Leon Emanuel found that the defense had made a prima facie case and called on prosecutor Dale Cox to provide race-neutral reasons. The explanations were accepted except with respect to three jurors. The State said it struck Shakira Davis because she was a nurse with small children who said she would not get paid if she did not attend work, but the defense responded that she said she could work on weekends if needed. The State said it struck Dr. Francis Conley because she was an educator and, even though she did not say so, implied from her demeanor that she would be forgiving of youth who had been in trouble. Finally, the State said that it struck Aeriel Brown, a first-year nursing student age 22, because she was "too young for this case." The trial judge was not satisfied with those answers and found that they were pretextual.

The State applied to the appellate court for a supervisory writ, which was granted. The appellate court said it was "not clear from this record" whether the trial judge made a finding of a pattern of discriminatory strikes. It reversed the trial judge's decision for not considering the actual composition of the jury before making a finding of a pattern, not clearly making such a finding before requiring a response from the State, and erring in not

accepting the prosecutor's reasons as race-neutral.[1] Accordingly, the three potential jurors at issue were not seated.

Defense counsel did not apply to the Supreme Court of Louisiana for a supervisory writ during this fast-moving mid-selection litigation. After the trial, appellate counsel did seek review of the Batson issue on direct appeal. The appellate court reviewed the claim in light of its general rule that it will not revisit an issue on appeal that was decided on a writ application. It found no reason to change its prior decision. State v. Holder, 25 S.3d at 927-28. Appellate counsel did not pursue this issue in a discretionary writ application to the Supreme Court of Louisiana.

Petitioner complains that both his trial attorney and his post-verdict appellate attorney rendered ineffective assistance when they did not pursue the Batson issue to the Supreme Court of Louisiana. Judge Roy Brun addressed this claim on post-conviction by reciting the Strickland standard and saying: "Petitioner has merely made vague allegations and provided no legal conclusions to support his claim of ineffective counsel." Tr. 6250. The appellate court offered a similar summary rejection. Tr. 6445. Despite the lack of any written indication the state court analyzed the claim, federal law requires that this court grant substantial deference to the state court's adjudication on the merits and deny relief unless

---

[1] The undersigned could not locate the writ grant in the 30-volume record filed by the State, but a copy was obtained from the appellate court and has been filed in the record.

that decision was an objectively unreasonable application of Strickland.[2]

The Supreme Court has "held that a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court." Wainwright v. Torna, 102 S. Ct. 1300, 1301 (1982), citing Ross v. Moffitt, 94 S.Ct. 2437 (1974). If a defendant has no constitutional right to counsel, he is not deprived of the effective assistance of counsel by his counsel's failure to file a discretionary application. Id. Both of the steps that Petitioner suggest counsel should have taken were requests for discretionary review. Petitioner was represented by counsel who did present this claim to the appellate court on direct appeal, and he was not constitutionally entitled to have counsel press the issue further. Habeas relief is not permitted on these claims.

**No Objection to Prejudicial Evidence**

Petitioner complains that counsel should have objected to prejudicial and irrelevant evidence admitted as part of the testimony of Detective Lane Smith, FBI agent J. T. Coleman, and Jarman Wynn. Petitioner complains that this testimony informed the jury that Petitioner was the subject of a telephone wiretap and an investigation of unrelated matters that were not relevant to the robbery.

---

[2] Petitioner also asserted a habeas claim based on the replacement of a juror for alleged misconduct. Petitioner argued that his counsel was ineffective for (1) not pursuing that issue by writ to the Supreme Court and (2) not invoking the cumulative error doctrine. Petitioner voluntarily withdrew both of those claims after the court pointed out that Petitioner did not exhaust his state court remedies with respect to them. Doc. 16.

Detective Lane Smith testified that investigators developed the name of Jerrod Johnson as a suspect in the robbery, and he heard a conversation (the contents of which he did not disclose) between Johnson and Petitioner that caused him to further investigate Petitioner. Smith stated that investigators obtained the authority to monitor Petitioner's cell phone and heard a conversation between Petitioner and Mr. Wynn.

Detective Smith said he met with Wynn and asked him to remove his shirt so that he could look for scars. Smith told Wynn that he was looking for a person who had been shot (rather than bitten), so as not to jeopardize the investigation. Wynn was apparently suspicious anyway and made a call to Petitioner three days later about the issue. Smith also testified that he had Petitioner remove his clothing and saw scars consistent with the dog bites inflicted on the fleeing suspect after the robbery. Tr. 4253-67.

Jarman Wynn testified about his visit from police officers. He said he knew Petitioner and other persons involved in the investigation. He admitted that he had a telephone call with Petitioner and suggested that police were looking for a suspect with a "tattoo" on his arm that you get "from something that barks." Tr. 4699-4707. FBI agent J. T. Coleman testified that he interviewed Wynn about the telephone conversation between Wynn and Petitioner. Coleman said that he told Wynn that he had heard the conversation during the course of an investigation that involved the use of a wiretap on Petitioner's phone. Tr. 4745-53. Coleman did not mention the nature of the investigation.

The state trial court summarized this claim and denied it on the grounds that Petitioner had "merely made vague allegations and provided no legal conclusions to support his claim

of ineffective counsel." Tr. 6250. The appellate court made a similar summary rejection on the merits. Tr. 6445. Petitioner complains that this testimony was not relevant to the charged offense and merely created prejudice against him by showing that he was part of a federal investigation. A review of the testimony shows, however, that there was no reference to any "other crimes" that were being investigated or that the wiretap and federal involvement had anything to do with any crime other than the robbery. It appears from the police reports (that were not introduced in evidence) that was the case. Local authorities requested federal assistance after they overheard a telephone call from the jail which they interpreted to be a possible threat on the life of someone involved in or with knowledge of the robbery. The challenged testimony was focused on showing that Petitioner received a tip from Mr. Wynn that police were looking for a suspect who had scars from dog bites, which was relevant to proving Petitioner was involved in the robbery. Counsel extensively cross-examined the witnesses, but there was little likelihood that any objection to the admission of the testimony would have succeeded. The state court did not apply Strickland unreasonably when it rejected this claim.

Petitioner makes a related argument that appellate counsel was ineffective because he did not argue on appeal that trial counsel rendered ineffective assistance when he did not object to the introduction of the wiretap evidence and related testimony. On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available. It means counsel who will perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts). When a petitioner

claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

There is very little chance an objection by trial counsel would have succeeded in excluding the evidence. And it is virtually impossible that an objection of ineffective assistance with regard to that issue, on direct appeal, would have resulted in an appellate reversal of the conviction. The underlying argument is seriously lacking in merit, and the Louisiana appellate courts are reluctant to entertain ineffective assistance issues on direct appeal because they are better suited to resolution on post-conviction application. State v. Howard, 751 So.2d 783, 802 (La. 1999); State v. Clark, 107 So.3d 646, 651-52 (La. App. 2d Cir. 2012). The state courts summarily rejected this claim when it was raised in a post-conviction application, and that decision was reasonable.

**Photo of Damian Hill**

Police officers Feliciano and Bates were involved in the chase of the robbers. Petitioner represents that the officers were shown a photo lineup and selected a photo of Damian Hill as the person they pursued that night, then years later "both officers testified at trial that petitioner looked similar to the assailant they pursued on the night in question." Petitioner says that the officers, when confronted with their previous identifications of Hill, said that the two men looked alike. Petitioner faults defense counsel for not offering a photo of Hill into evidence to show that the two men do not look alike.

It appears that Petitioner's version of the facts underlying this claim are not accurate. Corporeal Will Bates testified at trial, but he stated that Corporeal Josh Feliciano was serving military duty at the time of trial. The court has not located any trial testimony from Feliciano despite Petitioner's assertions that both officers testified at trial. Bates testified that Feliciano was working his dog near a residence when Bates, using the light on his shotgun, spotted a black male in the shrubs. Bates could see only the man's face at the time, and the man was not wearing a mask. The officers ordered the man out, and he initially crawled out but then fled with the dog attacking him. Bates testified that he was 6'2" 215 pounds, and the suspect was "considerably larger in height and weight." Petitioner was approximately 6' 6". Bates, on direct, did not identify Petitioner as the man he saw, nor did he even say that Petitioner looked similar to the suspect. Tr. 3953-70.

Bates was asked on cross-examination if he was shown a photo lineup. Bates said he was and had been unable to identify the suspect. When asked if he made a tentative selection, he said, "I think I did." Defense counsel suggested that Bates and Feliciano both made a tentative selection of the same person, Damian Hill, but Bates said he was not in the room when Feliciano made his selection, and he did not know the name of the person in the photo he saw. Tr. 3970-81. On redirect, Bates said that Detective Andrews called him in and showed him a lineup. Bates told Andrews that he did not think he could pick anybody but, if he had to choose, he would pick the person he pointed to. Bates said he made his tentative selection based on the size of the man's eyes. Tr. 3998.

The state court summarily rejected this claim on the merits, as it did the other claims. That adjudication was not an objectively unreasonable application of Strickland. Petitioner has identified one tactic that counsel might have used to improve the defense, but there is no reason to believe the verdict would have been different had counsel offered the photo of Hill in evidence. It has not been demonstrated, only alleged by Petitioner, that the men are markedly different in appearance. And Corporal Bates was plain that his identification was tentative and based solely on the size of the man's eyes. It must be remembered that the State did not call Bates to identify Petitioner as a suspect. It was defense counsel who took advantage of the prior lineup to cast doubt on the State's case. Counsel may not be deemed incompetent because they did not pursue that strategy with every available bit of evidence. The state court's rejection of this claim was a reasonable application of Strickland to the facts. Habeas relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of August, 2015.



Mark L. Hornsby
U.S. Magistrate Judge